CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

DEC 1 8 2008

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

|  |  |
|---|---|
| ESTATE OF JOHN CECIL SPINNER, DECEASED, | CIVIL NO. 6:07CV00050 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| ANTHEM HEALTH PLANS OF VIRGINIA, *et al.*, | |
| *Defendants.* | JUDGE NORMAN K. MOON |

This matter is before the Court on the Motion to Dismiss (docket no. 38) pursuant to Federal Rule of Civil Procedure 12(b)(6) jointly filed by Defendants Anthem Health Plans of Virginia, Inc. ("Anthem"), Employees Group Health Plan of Commercial Glass & Plastics (the "CGP Group Health Plan"), Commercial Glass & Plastics, Inc. ("CG&P"), and John M. Hiller, President of CGP and the alleged Administrator of the CGP Group Health Plan.[1] For the reasons that follow, I will GRANT Defendants' Motion to Dismiss all counts of Plaintiff's Amended Complaint, with prejudice.

## I. BACKGROUND

According to Plaintiff, John C. Spinner became a participant in the CGP Group Health Plan insured by Anthem while employed at CGP on July 1, 2003. On March 13, 2004, while still a participant in the CGP Group Health Plan, Mr. Spinner was admitted to Lynchburg General Hospital with an intracerebral hemorrhage. On April 2, 2004, Hiller sent Patricia Spinner, Mr. Spinner's wife, a letter informing her that CGP was unable to continue Mr. Spinner's group

---

[1] Plaintiff's Amended Complaint erroneously names John M. Hiller as the Administrator of the Plan. According to Defendants, the Administrator's actual name is Robert L. Hiller.

health insurance coverage. The letter stated, in pertinent part:

> As John is no longer a full or part-time employee of Commercial Glass & Plastics, and his sick, vacation and extended time has ended, we are unable to continue his health insurance coverage. Our Company has less than 20 employees, Federal COBRA insurance requirements do not apply.
>
> Because of a qualifying event that cancels John's health insurance coverage with Commercial Glass & Plastics you have two options:
>
> > You can add him to the insurance plan with your employer, or
> > You can obtain individual health insurance coverage for him.
>
> Please be aware that a decision needs to be made as soon as possible. John's health insurance through Commercial Glass & Plastics will end on April 30, 2004 and he will need a new policy before this one terminates.

Plaintiff's options for obtaining insurance coverage for Mr. Spinner after April 30, 2004 were also set forth in a Summary Plan Description ("SPD"), which Anthem was required to provide to Mr. Spinner under the Employee Retirement Income Security Act ("ERISA"). *See* 29 U.S.C. §§ 1022(a)(1), 1024(b). While it is unclear whether Mr. Spinner ever received a copy of the SPD, Plaintiff never alleges that Anthem failed to provide a copy to him.[2] Plaintiff has attached a copy of the SPD to the Amended Complaint. Among other things, the SPD advises participants of their options for obtaining insurance coverage when eligibility under a group plan ends, including switching to individual coverage[3] ("conversion coverage") or applying for a ninety-day continuation of group benefits under state law ("continuation coverage").[4] Neither Mr. Spinner nor his wife made efforts to apply to Anthem to switch to individual coverage or continue group benefits within the requisite time periods set forth in the SPD. Plaintiff claims that Mr. Spinner was incapacitated at all times between March 13, 2004 and his eventual death

---

[2] In Paragraph 48 of the Amended Complaint, Plaintiff states that "Defendants have provided Estate with no evidence whether the SPD was provided to [Mr. Spinner] during his lifetime, and strict proof is demanded at the hearing hereon." At the hearing, Defendants claimed that Mr. Spinner indeed received a copy of the SPD.

By contrast, Paragraph 105 assumes that Defendants provided Mr. Spinner with a copy of the SPD. In Paragraph 105, Plaintiff states that the CGP Group Health Plan, "through the SPD, communicated" mandated conversion and continuation coverage options "to subscribers such as John Cecil Spinner."

[3] According to the SPD, in order to switch to individual coverage when group coverage terminates, a participant must "[c]ontact Anthem within 31 days of the day coverage ends to prevent a lapse in coverage."

[4] The SPD states: "If you or a dependent loses eligibility for your group's coverage, you may be able to continue group coverage for a period of 90 days" under certain conditions.

2

on December 30, 2004 and was therefore unable to communicate options regarding conversion or continuation of coverage.

On April 29, 2004—one day before his coverage under the CGP Group Health Plan insured by Anthem terminated—Mr. Spinner was transferred from Lynchburg General to Kindred Hospital in Greensboro, North Carolina. Plaintiff claims that Anthem verified to Kindred that Mr. Spinner was pre-certified for insurance coverage but failed to disclose Mr. Spinner's pending election period. Mr. Spinner passed away at Kindred on December 30, 2004. Plaintiff claims that Anthem rebuffed repeated requests from Kindred to cover the medical expenses that accrued between May and December 2004. Consequently, Plaintiff now owes Kindred over one million dollars in medical bills.

William A. Bonner, Esq., was appointed Administrator of Spinner's Estate on November 13, 2006. On November 20, 2006, he sent almost identical letters to both Hiller and Anthem demanding "the appropriate legal notification" of Mr. Spinner's rights to continuation of benefits under the CGP Group Health Plan. For example, Bonner's letter to Anthem stated, in pertinent part:

> I have reviewed a letter from Mr. Spinner's employer, dated April 2, 2004, addressed to Patricia Spinner, and have determined that it does not comply with the requirements of notice to Patricia Spinner and to John Cecil Spinner respecting their individual rights to Virginia State continuation of insurance benefits. I enclose a copy of said letter.
>
> During Mr. Spinner's lifetime he was covered under a group policy with Anthem Blue Cross Blue Shield through his employer.
>
> I anticipate prompt contact from your Legal Department respecting this matter.
>
> I am demanding by this correspondence that you forward to my attention the appropriate legal notification of rights to continuing insurance coverage which should have been previously sent to Mr. Spinner during his lifetime. At all relevant time of service Mr. Spinner was an incapacitated person. He died December 30, 2004.

Neither Anthem nor Hiller responded to Bonner's letters. Consequently, on January 22, 2007, Bonner sent a letter to Owen Hunt, Assistant General Counsel for Anthem, and John Alford,

3

counsel for CGP. The letter stated:

> As my demand as Administrator of the Estate of John Cecil Spinner for necessary notification and forms to file for continuation of health benefits and any other available benefits has been denied, please forward to me instructions and necessary forms for my filing of an administrative appeal.

Based on these alleged facts, Plaintiff asserts six separate claims for relief: (1) wrongful denial of benefits under § 502(a)(1)(B) of ERISA; (2) breach of fiduciary duties under ERISA § 502(a)(2); (3) breach of fiduciary duties under ERISA § 502(a)(3); (4) violations of Virginia Code §§ 38.2-3416 and 38.2-3541; (5) equitable estoppel (against CGP, the CGP Group Health Plan, and Hiller); and (6) equitable estoppel (against Anthem).

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (internal citations omitted). Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 1965, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254-55 (W.D. Va. 2001). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. A plaintiff's complaint must therefore be plausible, not merely conceivable,

4

in order to avoid dismissal. *Id.*

### III. DISCUSSION

A. WRONGFUL DENIAL OF BENEFITS UNDER ERISA § 502(a)(1)(B)

Plaintiff first claims that Defendants wrongfully denied it health insurance benefits in violation of ERISA § 502(a)(1)(B) by refusing to provide information to Bonner that was necessary to extend coverage under the CGP Group Health Plan and by misrepresenting to Ms. Spinner that no continuing coverage options were available for Mr. Spinner. Under ERISA § 502(a)(1)(B), a health insurance plan participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). *See also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

Nothing in the facts alleged, however, suggests that Plaintiff was wrongfully denied insurance benefits or that Plaintiff even *applied* for benefits when Mr. Spinner's group coverage ended. Neither Mr. Spinner nor Ms. Spinner contacted Anthem to request conversion to individual insurance coverage within thirty-one days of April 30, 2004 (the date Mr. Spinner's group coverage terminated), as required by the terms of the SPD. Nor did anyone contact Anthem before April 30, 2004 to inquire about the continuation of Mr. Spinner's group policy for ninety days. Even assuming that, as Plaintiff claims, the thirty-one day deadline for requesting conversion coverage was tolled until Bonner was appointed Administrator of the Estate on November 13, 2006, nothing in the facts alleged indicates that Bonner applied for insurance benefits and was wrongfully denied. Bonner's November 20, 2006 letters to Hiller and Anthem, for example, cannot reasonably be construed to constitute requests to convert Mr. Spinner's insurance to an individual form of coverage. In the letters, Bonner informs Defendants that Hiller's April 2, 2004 letter to Ms. Spinner did "not comply with the requirements of notice

5

to [the Spinners] respecting their individual rights to Virginia State continuation of insurance benefits" and demands that Defendants forward to him "the appropriate legal notification of rights to continuing insurance coverage which should have been previously sent to Mr. Spinner during his lifetime." Bonner incorrectly assumed that the CGP Group Health Plan was subject to the Comprehensive Omnibus Reconciliation Act of 1985 (COBRA), which applies only to employers with over twenty employees and requires employers to provide notice to employees of continuation rights in the event of a termination of coverage. 29 U.S.C. §§ 1161(a), (b), 1166. Because CGP employed less than twenty employees at the time, COBRA's notice requirements were inapplicable and irrelevant. In *Weeks v. Western Auto Supply Co.*, this Court held that COBRA's post-termination notification provisions did not apply to ERISA *life* insurance plans because the plain language of the statute only required notice regarding the termination of an employee's group *health* insurance plan. 2003 U.S. Dist. LEXIS 10977, *15 (W.D. Va. 2003). Under this same rationale, COBRA's post termination notification requirements cannot apply to a group health plan for less than twenty employees. Plaintiff could not have reasonably expected Defendants to construe Bonner's erroneous request for a form of notice that was not even required under ERISA, COBRA, or other law as an application for conversion coverage. If Bonner really intended for the letters to constitute applications for conversion coverage on Mr. Spinner's behalf, he would have at least: (1) requested conversion to individual coverage for Mr. Spinner, and (2) explained that the thirty-one day deadline for applying for conversion coverage should be tolled as of April 30, 2004—the date Mr. Spinner's group coverage ended. Because neither Mr. Spinner, Ms. Spinner, nor Bonner submitted a valid request for conversion coverage to Defendants within the required thirty-one day time period, Defendants cannot be said to have "wrongfully denied" Plaintiff any benefits that were due under the CGP Group Health Plan by failing to respond to Bonner's November 20, 2006 letters. *See, e.g., Butler v. MFA Life Ins. Co.*,

6

591 F.2d 448, 452 (8th Cir. 1979) ("the right to convert the group policy to an individual policy is not an absolute right. The insurance company may properly insist upon the strict performance by the insured of the conditions precedent contained in the conversion provision… The insured's nonperformance defeats recovery under the policy."); *Hedeen v. Aon Corp.*, 2004 U.S. Dist. LEXIS 21706 (N.D. Ill. Oct 27, 2004) (plaintiff's claim for benefits must be dismissed where he fails to meet "a condition precedent to coverage under the Policy.").

Additionally, Hiller's April 2, 2004 letter to Ms. Spinner cannot constitute a "wrongful denial" of Mr. Spinner's health insurance benefits. CGP had no legal obligation to send the letter in the first place. As explained above, neither COBRA nor ERISA nor Virginia law requires insurers to provide special notice of insurance options available upon termination of group benefits, aside from what is already communicated in the SPD. The letter did not in any way deny Mr. Spinner any benefits that were owed to him. It correctly informed Ms. Spinner that Mr. Spinner's group coverage would be ending on April 30, 2004 and that she could either add him to her own plan with her employer or obtain individual health insurance coverage for him. The letter did fail to mention that the Spinners also had the option of continuing Mr. Spinner's group coverage for ninety days if certain conditions were met. But that information was already set forth in the SPD. Hiller's omission of one of the Spinners' potential options for coverage cannot by itself constitute a wrongful denial of benefits. In any case, Virginia law only requires insurers to provide *one* of two options (conversion coverage or continuation coverage) for individuals whose group coverage has been terminated. *See* Va. Code § 38.2-3541. Anthem provided both options in its SPD, and Hiller's letter at least informed Ms. Spinner of the conversion option. Nothing contained in the letter can entitle Plaintiff to relief for a wrongful denial under benefits under ERISA § 502(a)(1)(B). Accordingly, Count 1 of Plaintiff's Amended Complaint should be dismissed.

7

B. BREACH OF FIDUCIARY DUTIES UNDER ERISA § 502(a)(2)

Plaintiff claims that Defendants breached fiduciary duties owed to it under ERISA by, among other things, refusing to provide information regarding Mr. Spinner's options for coverage, providing false and misleading information concerning the termination of Mr. Spinner's coverage, and failing to properly evaluate and consider options in a manner that took Mr. Spinner's best interests into account. But because this claim is brought on Plaintiff's individual behalf rather than for the benefit of the CGP Group Health Plan as a whole, Plaintiff fails to state a claim under ERISA § 502(a)(2).

ERISA § 502(a)(2) "authorizes the Secretary of Labor as well as plan participants, beneficiaries, and fiduciaries, to bring actions on behalf of a plan to recover for violations of obligations defined in § 409," concerning breaches of fiduciary duties that harm plans.[5] *LaRue v. DeWolff, Boberg & Assocs.*, 128 S. Ct. 1020, 1022-23 (2008). "The principal statutory duties imposed on fiduciaries by that section 'relate to the proper management, administration, and investment of fund assets,' with an eye toward ensuring that 'the benefits authorized by the plan' are ultimately paid to participants and beneficiaries." *Id.* (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985)).

One well-recognized limitation on § 502(a)(2) claims is that any recovery sought must be for the plan as a whole rather than individual beneficiaries or participants. *Russell*, 473 U.S. at 144 (1985). Courts have repeatedly dismissed § 502(a)(2) claims used by plaintiffs as a means to recover individual benefits allegedly owed to individual participants or beneficiaries. *See, e.g.*, *Wertheim v. Hartford Life Ins. Co.*, 268 F. Supp. 2d 643, 658 (E.D. Va. 2003); *Gruber v. Unum*

---

[5] Section 409(a) provides: "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. §

8

*Life Ins. Co. of Am.*, 195 F. Supp. 2d 711, 718 (D. Md. 2002); *Marsteller v. Life Ins. Co. of N. Am.*, 1997 U.S. Dist. LEXIS 10176, *3 (W.D. Va. 1997). Recognizing this limitation, Plaintiff attempts to characterize Count 2 as one brought on behalf of the entire CGP Group Health Plan. Plaintiff contends that judgment in its favor would benefit all of the Plan participants by putting an end to Defendants' pattern of failing to provide vital information concerning coverage. But the relief that Plaintiff ultimately seeks is the recovery of individually-based benefits that should have allegedly been provided to Mr. Spinner. This is "the quintessential example of relief that is not available under section 502(a)(2)." *Coyne & Delaney Co. v. Blue Cross & Blue Shield*, 102 F.3d 712, 714-15 (4th Cir. 1996). The facts alleged show that Plaintiff's request that the Court enjoin Defendants from engaging in similar practices and procedures in the future is nothing more than a thinly-veiled attempt to re-characterize this claim as one brought for the Plan's benefit.

The U.S. Supreme Court recently recognized a very limited exception to its rule restricting recovery under § 502(a)(2) to actions brought on behalf of an entire plan. In *LaRue v. DeWolff, Boberg & Assocs.*, a participant in a defined contribution pension plan alleged that the plan administrator's failure to follow his investment directions was a breach of fiduciary duty because it depleted the value of the entire plan's assets, including his individual interest in the pension plan. 128 S. Ct. at 1022-23. The Court agreed, holding that "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of pension plan assets in a participant's individual account." *Id.* at 1026. This limited exception, however, has no bearing on the instant case and cannot save Plaintiff's § 502(a)(2) claim. For one, *LaRue* involved a defined contribution pension plan, not a group health insurance plan. The Court allowed the limited

1109(a).

exception in this context because with defined contribution plans, "fiduciary misconduct need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive." *Id.* at 1025. Such a concern is not present in this case. The *LaRue* Court relied on the fact that the alleged misconduct at issue fell squarely within the categories of concern that the statutory duties imposed by ERISA aimed to address: namely, "the proper management, administration, and investment of fund assets." *Id.* at 1024 (citations omitted). In this case, the management, administration, and investment of fund assets are not at issue. *LaRue* did nothing to alter the well-established proposition that "§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries." *Id.* at 1026. Because the limited *LaRue* exception does not apply and Plaintiff seeks relief for individual injuries distinct from injuries to the CGP Group Health Plan as a whole, Count 2 of Plaintiff's Amended Complaint should be dismissed.

C. BREACH OF FIDUCIARY DUTIES UNDER ERISA § 502(a)(3)

Based on the same facts alleged under Count 2, Plaintiff also claims that Defendants breached fiduciary duties in violation of ERISA § 502(a)(3).[6] But Plaintiff cannot state a claim under this Section of ERISA because, among other reasons, § 502(a)(3) does not provide the type of relief that Plaintiff essentially seeks.

Congress intended § 502(a)(3) to be "catchall" ERISA provision that acts "as a safety net, offering appropriate *equitable* relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) (emphasis added). Section 502(a)(3) "authorizes some individualized claims for breach of fiduciary duty,

---

[6] 29 U.S.C. § 1132(a)(3) provides: "A civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of this plan."

but not where the plaintiff's injury finds adequate relief in another part of ERISA's statutory scheme." *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 105 (4th Cir. 2006). Accordingly, a plaintiff may not proceed with a § 502(a)(3) claim where relief is potentially available under § 502(a)(1)(B). *Id.* at 106. *See also Hoyle v. Liberty Life Ass. Co. of Boston, Inc.*, 291 F. Supp. 2d 414, 417-18 (W.D.N.C. 2003).

Furthermore, "[w]hen a beneficiary simply wants what was supposed to have been distributed under the plan, the appropriate remedy is § 502(a)(1)(B)." *Coyne & Delaney Co. v. Blue Cross & Blue Shield*, 102 F.3d 712, 715 (4th Cir. 1996). It is clear that the relief sought by Plaintiff under § 502(a)(1)(B) is essentially the same as that sought under § 502(a)(3). While Plaintiff attempts to avoid this conclusion by requesting an injunction and "restitution" in the form of full benefits in Count 3, the relief sought is essentially the same as that sought under § 502(a)(1)(B). In both cases, Plaintiff is asking for what it alleges should have been distributed under the CGP Group Health Plan: benefits for the time period of May 2004 until December 2004. Section 502(a)(1)(B), not § 502(a)(3), is the appropriate avenue for such a claim.

Further, § 502(a)(3) provides *exclusively* for equitable, not legal, relief. In Count 3, Plaintiff seeks "restitution in the form of full benefits." Yet "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore the plaintiff particular funds or property in the defendant's possession." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002). Forms of equitable restitution available under § 502(a)(3) include constructive trusts or equitable liens, which are appropriate "where money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213. Money damages, injunctions to compel the payment of money past due under a contract, and specific performance of past due monetary obligations are all classic examples of forms of relief *not* available under §

11

502(a)(3). *Id.* at 210.

As noted above, Plaintiff's request for "restitution in the form of full benefits" is a thinly-veiled duplication of its claim for "the full and complete payment of benefits under the Plan." Both are essentially requests for legal, not equitable, relief. Plaintiff is seeking to impose its current monetary liability to Kindred Hospital upon Defendants. Plaintiff is not seeking money or property in Defendants' possession that can be clearly traced to its own funds. The relief sought is most akin to money damages or the specific performance of allegedly past due monetary benefits—both prime examples of forms of relief that is not available under § 502(a)(3). *Knudson*, 534 U.S. at 210.

In Count 3, Plaintiff also seeks to "enjoin Defendants from engaging in the claimed practices and procedures" in the future. While an injunction is a form of equitable relief available under § 502(a)(3), it would be inappropriate in this case because there is nothing to enjoin under the facts alleged. Because the CGP Group Health Plan was not subject to COBRA requirements, Defendants had no obligation to provide Plaintiff with notice of its options for continuation or conversion coverage, aside from what was already communicated in the SPD. *See, e.g., Weeks*, 2003 U.S. Dist. LEXIS 10977. Because the facts alleged do not otherwise show that Defendants acted in violation of ERISA or any other law, there is nothing for this Court to enjoin in the future.

Irrespective of the reasons already discussed, Plaintiff also fails to state a claim under § 502(a)(3) because the facts alleged in the Amended Complaint are insufficient to show a breach of fiduciary duty by Defendants. To state a claim for a breach of fiduciary duty under § 502(a)(3), a plaintiff must show that: (1) the defendant was a fiduciary of the ERISA plan; (2) the defendant breached its fiduciary responsibilities under the plan; and (3) injunctive or other equitable relief is necessary to remedy the breach. *Adams v. Brink's Co.*, 420 F. Supp. 2d 523,

12

549 (W.D. Va. 2006) (citing *Griggs v. E.I. Dupont De Nemours & Co.*, 237 F.3d 371, 379-80 (4th Cir. 2001)). The facts alleged cannot support a conclusion that Hiller was acting in a fiduciary capacity when he sent the April 2, 2004 letter to Ms. Spinner or that Anthem ever breached any applicable fiduciary duties.

A "person is a fiduciary with respect to a plan," and therefore subject to ERISA fiduciary duties, "to the extent" that he or she "exercises any discretionary authority or discretionary control respecting management" of the plan, or "has any discretionary authority or discretionary responsibility in the administration of the plan." *Varity Corp. v. Howe*, 516 U.S. 489, 489 (1996) (quoting ERISA § 3(21)(A)). When determining whether a party is a fiduciary, "a court must ask whether a person is fiduciary with respect to the particular activity at issue." *Varity Corp*. 516 U.S. at 489. While discretionary acts are fiduciary acts, ministerial administrative acts are not." *Adams v. Brinks's Co.*, 261 Fed. Appx. 583, 592 (4th Cir. 2008) (citing *Healthsouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1009 (4th Cir. 1996). Thus, to even be acting in a fiduciary capacity under § 502(a)(3), a defendant must be engaged in discretionary, as opposed to ministerial, acts.

While Plaintiff claims Hiller was a fiduciary for the CGP Group Health Plan, the facts alleged in the Amended Complaint do not indicate that he possessed the requisite discretionary authority over the administration and management of the Plan to actually be a fiduciary in the first place. The Amended Complaint, for example, does not indicate that Hiller had the authority to make decisions concerning plan policy, practices, and procedure alongside Anthem. Moreover, the facts alleged do not support a conclusion that Hiller was acting in a fiduciary capacity when he sent the April 2, 2004 letter to Ms. Spinner. Writing and sending the letter was a ministerial, not discretionary, act. *See Weeks,* 2003 U.S. Dist. LEXIS 10977 at *20 ("administrative acts, such as advising participants about plan benefits based on the terms of the

13

plan, do not amount to discretionary functions under ERISA. Even promises from management cannot support an ERISA breach of fiduciary duty claim.") (citing *Elmore v. Cone Mills Corp.*, 23 F.3d 855 (4th Cir. 1994); 29 C.F.R. § 2509.75-8 (an individual who lacks the power to make decisions as to plan policy, practices and procedures but advises participants of their rights and options under the plan acts in a purely ministerial function); *Trigon*, 235 F. Supp. 2d at 504 (explaining plan benefits in writing does not constitute the exercise of "discretionary authority or discretionary control respecting management."). Because the facts alleged do not show that Hiller was acting in a fiduciary capacity by writing the letter to Ms. Spinner, Hiller's actions cannot serve as the basis of Plaintiff's breach of fiduciary duty claim.

As the underwriting insurer for the CGP Group Health Plan, however, Anthem had the requisite discretionary authority over the administration and management of the Plan to be a fiduciary under the facts alleged. But Plaintiff fails to allege any facts that would show Anthem breached any of its fiduciary duties. ERISA fiduciaries have an obligation "not to misinform employees through material misrepresentations and incomplete, inconsistent or contradictory disclosures." *Griggs v. E.I. DuPont De Nemours & Co.*, 237 F.3d 371, 380 (4th Cir. 2001) (quoting *Harte v. Bethlehem Steel Corp.*, 214 F.3d 446, 452 (3d Cir. 2000). Furthermore, "an ERISA fiduciary that knows or should know that a beneficiary labors under a material misunderstanding of plan benefits that will inure to his detriment cannot remain silent— especially when that misunderstanding was fostered by the fiduciary's own material misrepresentations or omissions." *Id.* at 381. Nothing in the Amended Complaint would support a conclusion that Anthem misrepresented or omitted material information that should have been communicated to Mr. Spinner. The SPD clearly communicated the Spinners' available options for continuing or converting Mr. Spinner's health insurance. And Plaintiff does not allege that Anthem failed to provide Mr. Spinner with a copy of the SPD when he first enrolled in the CGP

14

Group Health Plan.[7] Further, the facts alleged do not support a conclusion that Anthem somehow knew or should have known that Mr. Spinner, Ms. Spinner, and Mr. Bonner all labored under a material misunderstanding of the requirements for converting or continuing coverage given the information that was available in the SPD. For all of these reasons, Anthem's actions cannot serve as the basis for Plaintiff's breach of fiduciary duty claim. Accordingly, Count 3 of Plaintiff's Amended Complaint should be dismissed.

D. VIRGINIA CODE §§ 38.2-3416, 38.2-3541

Plaintiff claims Defendants acted in violation of Virginia Code §§ 38.2-3416 and 38.2-3541 by failing to provide Mr. Spinner with notice of his rights to continuation and conversion coverage upon termination of his group insurance coverage and by later refusing to allow Mr. Bonner to elect such coverage in his capacity as Administrator of the Estate. Section 38.2-3416 requires an insurer who issues a group health insurance policy to "be able to offer" non-group health insurance to individuals whose coverage terminates.[8] Section 38.2-3541 requires a group health insurance plan to be able to provide one of two options to its participants in the event that the group insurance terminates.[9] Under "Option 1," the insured may convert the group policy to

---

[7] As explained above, Plaintiff first states Defendants failed to provide it with proof that the SPD was provided to Mr. Spinner during his lifetime but then later claims that Anthem communicated continuation and conversion coverage options to Mr. Spinner through the SPD.

[8] Va. Code § 38.2-3416(A) states: "Before an insurer who delivers or issues for delivery in this Commonwealth or who renews, reissues or extends if already reissued, any group hospital, medical and surgical or group major medical policy, the insurer shall be required to be able to offer without evidence of insurability to residents of this Commonwealth who are covered under the policy, whose eligibility may terminate under the policy, and who may elect Option 1 under § 38.2-3541 a nongroup policy of accident and sickness insurance, either individual or family, whichever is appropriate, pursuant to the provisions of § 38.2-3541 unless such termination is due to termination of the group policy under circumstances in which the insured person is insurable under other replacement group coverage or health care plan without waiting periods or preexisting conditions under the replacement coverage or plan."

[9] Va. Code § 38.2-3541 states:

Each group hospital policy, group medical and surgical policy or group major medical policy delivered or issued for delivery in this Commonwealth or renewed, reissued or extended if already issued, shall contain, subject to the policyholder's selection, one of the options set forth in this section. These options shall apply if the insurance on a person covered under such a policy ceases because of the termination of the person's eligibility for coverage, prior to that person becoming eligible for Medicare or Medicaid benefits unless

15

an individual insurance policy as long as application for the policy is made within thirty-one days of the termination and other requirements are satisfied. Va. Code § 38.2-3541. Under "Option 2," the insured may have his coverage under the group policy continued for a period of ninety days immediately following the date of termination if the total premium for the ninety-day period is paid to the group policyholder prior to the termination and other requirements are met. *Id.* In Plaintiff's case, both of these options ("conversion coverage" and "continuation coverage") were provided for in the SPD.

---

such termination is due to termination of the group policy under circumstances in which the insured person is insurable under other replacement group coverage or health care plan without waiting periods or preexisting conditions under the replacement coverage or plan.

1. Option 1: To have the insurer issue him, without evidence of insurability, an individual accident and sickness insurance policy in the event that the insurer is not exempt under § 38.2-3416 and offers such policy, subject to the following requirements:

a. The application for the policy shall be made, and the first premium paid to the insurer within thirty-one days after the termination;

b. The premium on the policy shall be at the insurer's then customary rate applicable: (i) to such policies, (ii) to the class of risk to which the person then belongs, and (iii) to his or her age on the effective date of the policy;

c. The policy will not result in over-insurance on the basis of the insurer's underwriting standards at the time of issue;

d. The benefits under the policy shall not duplicate any benefits paid for the same injury or same sickness under the prior policy;

e. The policy shall extend coverage to the same family members that were insured under the group policy; and

f. Coverage under this option shall be effected in such a way as to result in continuous coverage during the thirty-one-day period for such insured.

2. Option 2: To have his present coverage under the policy continued for a period of ninety days immediately following the date of the termination of the person's eligibility, without evidence of insurability, subject to the following requirements:

a. The application for the extended coverage is made to the group policyholder and the total premium for the ninety-day period is paid to the group policyholder prior to the termination;

b. The premium for continuing the group coverage shall be at the insurer's current rate applicable to the group policy; and

c. Continuation shall only be available to an employee or member who has been continuously insured

16

Plaintiff cannot state a claim under Virginia Code §§ 38.2-3416 and 38.2-3541 because Title 38.2 (the "insurance code") does not provide a private right of action. *See Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 230 (4th Cir. 2004) (holding that there is no private right of action for a violation of § 38.2-3408 because the Virginia legislature did "not evince a legislative intent to create private rights of action under the insurance code."). *See also A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 674 (4th Cir. 1986) (federal courts must be wary of reading private rights of action into state statutes where state courts and legislatures have not done so). Title 38.2 indicates that the sole and exclusive remedy for violations lies with the State Corporation Commission, which is empowered to order monetary penalties, injunctions, and restitution payments, as well as issue cease and desist orders and suspend and revoke insurance licenses. *See* Va. Code §§ 38.2-218 – 38.2-220. The Commission may also impose, enter judgment for, and enforce any civil penalty against any person who violates any provision of Title 38.2. Va. Code § 38.2-221. A basic canon of statutory construction is that "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979). *See also School Bd. v. Giannoutsos*, 238 Va. 144, 147 (1989). Accordingly, this Court declines to read a private right of action into Virginia Code §§ 38.2-3416 and 38.2-3541.

Even if Title 38.2 somehow provided a private right of action, Plaintiff fails to allege any facts that would show a violation of either § 38.2-3416 or § 38.2-3541. Section 38.2-3416(A) requires insurers *to be able* to offer individual insurance policies to individuals whose group coverage is terminated. Plaintiff does not allege that Anthem was unable to offer individual conversion coverage to Mr. Spinner. The text of the SPD shows that Anthem was in fact able to

under the group policy during the entire three months' period immediately preceding termination of eligibility.

17

offer both "Option 1" (conversion coverage) and "Option 2" (continuation coverage) under § 38.2-3541. Furthermore, nothing in § 38.2-3416 or § 38.2-3541 requires insurers to provide any form of notice to an individual whose group coverage has been terminated. For these reasons, Count 4 of the Amended Complaint should be dismissed.

### E. EQUITABLE ESTOPPEL

Plaintiff claims that CGP, the CGP Group Health Plan, and Hiller should be equitably estopped from denying liability for the losses incurred by the Estate because Hiller's April 2, 2004 letter to Ms. Spinner falsely represented that Mr. Spinner lacked any rights or options to elect continuation of coverage under the CGP Group Health Plan. Plaintiff also asserts a second count against Anthem, claiming that it should be equitably estopped from denying liability for the Estate's losses because it deliberately concealed the fact that Mr. Spinner's health insurance coverage would terminate upon his arrival at Kindred Hospital in North Carolina. Plaintiff fails to state a claim of equitable estoppel against any of the Defendants, however, because the claims are preempted by ERISA and not recognized by the Fourth Circuit in any case.

Section 514(a) of ERISA pre-empts "any and all State laws insofar as they may have now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). *See also Shaw v. Delta Air Lines*, 463 U.S. 85, 91 (1983).[10] Section 514(a)'s pre-emptive reach is broad: a law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan." *Id.* at 96-97. "The preemption provision was intended to displace all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985). Generally, any state law claim that that "duplicates, supplements, or supplants the ERISA civil

---

[10] The term "State law" includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).

enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). State laws regulating insurance, however, are exempt from ERISA's preemption provision. *Shaw*, 463 U.S. at 91 (citing 29 U.S.C. § 1144(b)(2)(A)).

The U.S. Supreme Court and the Fourth Circuit have consistently held that several different types of common law claims, including estoppel, may be preempted by ERISA § 514(a). *See, e.g., Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) (state common law breach of contract, fraud, and bad faith claims preempted by ERISA); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987) (common law breach of contract and tort claims for mental anguish preempted by ERISA); *Gresham v. Lumberman's Mut. Cas. Co.*, 404 F.3d 253, 258 (4th Cir. 2005) (state law breach of contract claim preempted by ERISA); *Salomon v. Transamerica Occidental Life Ins. Co.*, 801 F.2d 659, 660 (4th Cir. 1986) (state law breach of contract and estoppel claims preempted by ERISA); *Holland v. Slack*, 772 F.2d 1140, 1147 (4th Cir. 1985) (same); *Powell v. Chesapeake & Potomac Tel. Co.*, 780 F.2d 419, 422 (4th Cir. 1985) (state law claims based on the maladministration of employee benefits preempted by ERISA). Plaintiff's estoppel claims should also be preempted in this case. The CGP Group Health Plan was an employee benefit plan, and Plaintiff's estoppel claims relate to the Plan. Recognition of the estoppel claims would duplicate the civil enforcement scheme already set in place by ERISA's substantive requirements discussed above.

Furthermore, in the Fourth Circuit, "equitable estoppel is not available to modify the written terms of an ERISA plan in the context of a participant's suit for benefits." *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1027 (4th Cir. 1997) (citing *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 58-60 (4th Cir. 1992). Here, Plaintiff attempts to do just that. Plaintiff seeks to recover full benefits that he alleges were

19

owed to him under the CGP Group Health Plan from May 2004 to December 2004. Yet under the terms of the Plan, as communicated by the SPD, Plaintiff was required to apply for conversion coverage within thirty-one days of April 30, 2004—the date Mr. Spinner's group insurance coverage ended. No one ever applied for conversion coverage on Mr. Spinner's behalf. Plaintiff now seeks to effectively modify the Plan's terms by requesting conversion benefits without having met the requirements set forth in the SPD. Because an estoppel suit cannot be maintained to modify the written terms of an ERISA plan in the context of a suit for benefits, Plaintiff cannot state claims of equitable estoppel against any of the Defendants.

Aside from the fact that Plaintiff's equitable estoppel claims are preempted by ERISA and are not cognizable in the Fourth Circuit, Counts 5 and 6 of the Amended Complaint should also be dismissed because Plaintiff fails to plead facts sufficient to make out an equitable estoppel claim. A claim for equitable estoppel "arises when one party has made a misleading misrepresentation to another party and the other has reasonably relied to his detriment on that representation." *Ralph's Grocery Co.*, 118 F.3d at 1027 (quoting *Black v. TIC Investment Corp.*, 900 F.2d 112, 115 (7th Cir. 1990). "Reliance on the misrepresentation is reasonable only if the party asserting estoppel does not or should not know the truth." *Id.* In Virginia, a party invoking equitable estoppel theory must prove that:

> (1) A material fact was falsely represented or concealed; (2) The representation or concealment was made with knowledge of the facts; (3) The party to whom the representation was made was ignorant of the truth of the matter; (4) The representation was made with the intention that the other party should act upon it; (5) The other party was induced to act upon it; and (6) The party claiming estoppel was misled to his injury.

*Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.*, 221 Va. 81, 86 (1980).

Anthem's alleged misrepresentation of Mr. Spinner's coverage to Kindred Hospital cannot form the basis of Plaintiff's equitable estoppel claim because Kindred is not a party to this case. While Kindred itself may or may not have an equitable estoppel claim against Anthem

20

under the facts alleged, Plaintiff does not. The elements of an estoppel claim require that the defendant falsely represent or conceal a material fact to the plaintiff, and that the plaintiff be misled to his injury as a result. *Boykins*, 221 Va. at 86. Any alleged misrepresentation on Anthem's part occurred as to Kindred, not to Plaintiff. Plaintiff was only indirectly injured as a consequence of any misrepresentation by Anthem that was alleged in the Amended Complaint. Furthermore, all Plaintiff claims is that Defendants failed to inform Kindred that Mr. Spinner's group health insurance coverage would terminate on April 30, 2004. Nowhere does Plaintiff allege that Anthem knew that Mr. Spinner would lack insurance coverage on that date. Given the options available to Plaintiff for converting or continuing Mr. Spinner's insurance coverage under the circumstances, there is no way that Anthem could have known whether Mr. Spinner would be covered by insurance when he was ultimately transferred to Kindred. For all these reasons, Plaintiff fails to plead a prima facie case of equitable estoppel with respect to Anthem.

Additionally, the facts alleged cannot support a conclusion that Plaintiff was in any way induced to act upon the alleged misrepresentation in Hiller's April 2, 2004 letter to Ms. Spinner. To recall, the letter informed Ms. Spinner that Mr. Spinner's group health insurance coverage was ending and that she had the options of either adding him to an insurance plan with her own employer of obtaining individual health insurance coverage for him. Neither of these statements was false. Hiller did fail to inform Ms. Spinner of the continuation coverage option described in the SPD. But, as previously stated, Anthem was only legally required to provide one of two options (conversion or continuation coverage) under the circumstances and was not legally required to provide any form of notice regarding those options. *See* Va. Code §§ 38.2-3416, -3541. Hiller's letter clearly informed Plaintiff of its right to apply for at least one of the two options. In no way did Hiller's letter misrepresent to Ms. Spinner that options for obtaining coverage for Mr. Spinner were unavailable under the circumstances. Furthermore, Plaintiff fails

to allege that Hiller's alleged misrepresentation induced it into failing to apply for coverage on Mr. Spinner's behalf. If anything, the letter should have induced Ms. Spinner or another representative of Mr. Spinner to contact Anthem or CGP to obtain conversion coverage within the thirty-one days required by the SPD. For these reasons, Plaintiff fails to state a prima facie case of equitable estoppel with respect to CGP, the CGP Group Health Plan, and Hiller. Accordingly, Counts 5 and 6 of the Amended Complaint should be dismissed.

## IV. CONCLUSION

For the reasons stated herein, the Court will grant Defendant's Motion to Dismiss all counts of Plaintiff's Amended Complaint, with prejudice. An appropriate Order will follow. The Clerk of Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record and to Plaintiff.

Entered this 18th day of December, 2008.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

22